Good morning, Your Honors. May it please the Court, Counsel. Your Honors, Kristin Shepherd was incarcerated after being charged with four counts of a sexual nature related to a minor victim. That was in Case 3-10-0903. On May 4th and on May 11th of 2010, the defendant met with Attorney Anthony Tomkowitz about possible representation. Now, what the two individuals talked about during these consultations differs depending on who you ask. According to the defendant, they talked about the case, about the fact that the defendant wanted certain statements suppressed and about the filing of a motion to suppress and other things of that nature, whereas Attorney Tomkowitz testified that they didn't get into the facts of the case, nor did they talk about a defendant's experience and the charges that the defendant was facing, possible sentences, financial matters and things of that nature. A couple days after the May 11th, 2010 meeting, another, a different inmate of the Will County Detention Facility named Franklin Bryant mentioned to a Will County Sheriff's Deputy that the defendant had solicited him to commit a crime on behalf of the defendant. A murder. Yes, to murder four witnesses in the defendant's pending case. So Franklin Bryant informed the Sheriff's Deputy. The Sheriff's Deputy contacted the State's Attorney's Office and talked to Assistant State's Attorney Michael Nick. Michael Nick looked to see who Franklin Bryant's attorney was and it turned out it was Anthony Tomkowitz. So he had Tomkowitz come in for a meeting. Nick also looked to see who the defendant's attorney was at that point and it was listed as the public defender. So Nick and Tomkowitz talked. Nick told Tomkowitz what Franklin Bryant had informed authorities that the defendant was soliciting him to do. And they also talked and then at that meeting Tomkowitz told Nick that he had had a couple of consultations recently with the defendant about possibly representing him. Tomkowitz basically said to Nick I would be representing him soon. They weren't attorney-client at that point. Let me ask you this. What's the difference? Does the attorney-client privilege cover somebody's plans to commit a future crime? Sure, certainly does not. Is that privilege? No, of course not. At the end of the day, who cares? Your Honor, that kind of segued right to my argument. In reading my brief, I realized I focused a lot on the relationship between the defendant and Tomkowitz. Whereas I probably should have focused a lot more on the State's role in all of this because this isn't the case of Christian Shepard versus Anthony Tomkowitz. The case is the people versus Christian Shepard. So we really need to talk about the State's role in this and not so much the role of Anthony Tomkowitz in regards to the defendant. I think that's secondary to what I probably should have focused on more in my brief. My argument today will focus more on the State's role because we're talking about suppressing very important evidence and that shouldn't be taken lightly. Basically, the people would submit that Michael Nick, the assistant State's attorney, Michael Nick's involvement in this case does not warrant the suppression of evidence that the trial judge effectuated below. Well, what did the attorney do wrong? Which attorney? Any attorney. Tomkowitz. What did he do wrong? Well, the defendant will argue. I didn't ask what the defendant will argue. I asked what do you think he did wrong? It's a tough one. I don't think he did a whole lot wrong. Well, isn't a lawyer legally with a client? If I go to my lawyer and say, hey, I'm going to need your representation because I'm going to go out and kill me about six people this afternoon and I'll be back tomorrow. Privileged information? No, of course not. I'm going to kill Fred over at noon and such and such and I'm going to do this and that. In fact, isn't that lawyer obligated to call the police and tell them, hey? Absolutely. Certainly what he can't do is talk to the defendant and say, hey, who he may or may not be representing at that point, hey, you've got to stop doing this. No, he has more of a duty than that. He has a duty more to the safety of those individuals than he does to the defendant. He has a duty to report it. Absolutely, he does. That's why people submit that this shouldn't have been suppressed. Not only did Tomkowitz do nothing wrong, but certainly, I would argue Tomkowitz didn't do anything wrong, but if he didn't do anything wrong, then certainly Assistant State's Attorney Nick did nothing wrong by, I don't know what we could argue that the State's Attorney could have done differently here. I mean, he has concrete evidence here that the defendant is soliciting murder and he certainly allowed Franklin Bryant to wear this wire. Franklin Bryant wanted to wear the wire. He came to him. This wasn't something where the defendant was tricked or trapped or anything into saying what he said, into soliciting what he solicited. And I just don't see how the judge's decision below can support this type of discussion because I just don't see there was no benefit from any wrongdoing if there even was any wrongdoing here. The Assistant State's Attorney had no idea of the relationship between Tomkowitz and the defendant at this point, whatever that relationship was. Again, I focus more on that in my brief than I should have because I think it's secondary to any type of discussion that we should be having in this case. Again, the exclusionary rule is designed to deter tainted conduct, I don't know what the right word is, but to deter similar conduct. And just exclusion in this case isn't the proper remedy. There really isn't any remedy, I guess. Well, the exclusionary rule, there's a tradeoff to say, to try to deter police misconduct or prosecutor misconduct as an alternative to arresting police officers and charging them or suing them when they go a little bit overboard or go, depending on how far they go overboard. So it's a tradeoff way to deter them from doing it, but at the same time not make police officers fearful of arrest or lawsuits when they're doing their job. So assuming those police officers, when they get a bad guy, they want him or her convicted, and so they say, well, if you don't follow the rules, this evidence is going to be excluded. And where in the case law is the support for the idea that even assuming an ethical violation by a defense attorney, that that triggers the exclusionary rule? There isn't any support for that, Your Honor. And specifically referring to this case, I don't think the defendant can point to anything that was gained here by the state in relation to Anthony Tomkowitz's conduct here. The state didn't facilitate this. This was going to happen anyway. I think the record, well, there are certain things in debate. I think the record is pretty clear that Franklin Bryant was going to wear this wire regardless. It was his idea. He did it in exchange for the state not objecting to a furlough request that Franklin Bryant had made. It was going to happen. And the events were set in motion for this to happen before Tomkowitz got involved, certainly before Nick got involved. There's just no benefit to the state here based on anything Tomkowitz may have done wrong if he had done anything wrong at all. When you say may have done wrong, what do you think may have? Well, again, I'm just assuming argument, Your Honor. I know the defendant is going to come up here and argue that Tomkowitz facilitated this whole thing and should have had some sort of duty to intervene here. Again, as I was talking about with Justice Schmitt, I don't believe that Attorney Tomkowitz did anything wrong in this case. I stand by my arguments in my brief on those matters. But if Tomkowitz didn't do anything wrong, then certainly Nick didn't do anything wrong. And if Nick didn't do anything wrong, then what is the purpose of the exclusion of this evidence? The people would submit that there is no purpose. It's not a means to any end here. And the trial judge should have seen that this evidence wasn't tainted by any type of conduct, any type of misconduct by anybody. This was, again, this was set in motion long before either of these attorneys stepped into play in this matter. And the evidence was properly obtained and should not have been suppressed. Yeah, that's all I have. If there are any other questions, I'd be happy to answer them now. Thank you, Counsel. Counsel, you may proceed. May it please the Court, Counsel, unless the panel has some questions for me, I expect that it does. I just want to make a couple of brief statements about this case. I think when we take a look at this fact pattern in a more abstract manner, I think one of the things I like to say is, does this pass the smell test? And if we move past the issue of attorney-client relationship, prospective relationship, what we then have is this. We have an attorney who has two clients who are now going to be at odds with each other. And on the other hand, we have a state's attorney who's asking the attorney to make sure the client who's going to cooperate is on board in getting incriminating information against your other client. The state is asking the attorney to participate in that process. Because the record in this case was that when Franklin Bryant reached out to law enforcement, he said, contact my attorney, Tony Tomkiewicz, and he wrote down Mr. Tomkiewicz's phone number. Now, if we have a jailhouse snitch who's saying, oh my God, this guy wants me to kill people, but on the other hand said, call my attorney, it's very obvious what this individual is doing. He's looking to use it to curry favor. And when he said, reach out to my attorney, that creates an obligation for the state because he's represented by counsel. And whatever consideration that Mr. Bryant was going to get, be it furlough, consideration on his pending charges, an outright release as opposed to furlough or anything like that, the state was obligated to involve Mr. Tomkiewicz or whoever was representing Mr. Bryant. Okay, so the snitch goes and tells the sheriff's deputy, hey, this guy just tried to hire me to kill about four or five people, including a police officer or two. And so obviously they want to talk to this guy. He's represented by counsel. Can the state's attorney go talk to that incarcerated fellow who's represented by attorney without contacting his lawyer? I would say that if the only goal of the state's attorney was to obtain information, because he's not representing that individual at that point yet. But in this case... But I'm talking about the fellow who goes to the police and says, hey, this other inmate tried to hire me to kill some people. And now they say, well, gee, we're going to want to have a talk. Let's talk further. And he's represented by counsel. Can they sit down there and talk to him without his attorney present? They can. Absolutely they can. But that's not what happened in this case. You don't think even if they want to say, hey, look, we can do something. There's nothing wrong with saying we can do something mutually agreeable here. If you're willing to wear a wire, maybe we're willing to help you out a little bit on your other charge. Again, I'm sorry for interrupting, but I would agree that they can't. But in this case, what happened was Mr. Nick recognized that Franklin Bryant wanted his attorney involved, spoke to Mr. Tomkiewicz. And when they brought Mr. Bryant into court, the conversation was, I can do this anyways. I don't need you here, Mr. Tomkiewicz. The conversation was, go back, talk to your client, make sure he's on board with this. So what's wrong with that? What's wrong with it? Because now at this point, it's creating a situation where Mr. Tomkiewicz is undertaking as part of his representations of Mr. Bryant to make sure that, okay, well, what do you want to get out of this? Do you understand that you've got to wear a wire? Do you understand you've got to tell the truth? Do you understand you've got to testify? Do you understand that the more you can provide for them, the more consideration you're going to get? That happens every day. Correct, but not against somebody that Mr. Tomkiewicz should be representing. Well, let's talk about that a second. So you're sitting in your office someday, and a fellow comes in and says, hey, look, I was charged with, I want you to represent me on this sexual assault case. But don't do a lot of work, because here's why. I'm pretty well got a deal. I've got a guy that I'll have it wrapped up in a day or two. He's going to kill the victims, the prosecutor, and the investigating police officers, so your job's going to be pretty easy. So I want you to represent me on that matter, but it's really going to be, I'm going to take care of it. Now, what's your duty? My duty is to advise my client to not do anything illegal and report the conversation to law enforcement, most likely. Exactly. And so what did Tomkiewicz, and in fact Tomkiewicz didn't report the conversation. The police came to him and the state attorney came to him and said, hey, we got information that you might be wrapped up with this guy, and we got information from a guy who you represent who says he's trying to hire him to kill the guy. I think the issue, though, with your hypothetical is obviously Mr. Shepard did not disclose to Mr. Tomkiewicz whatever his intentions were regarding the witnesses in this case. We're not arguing that Mr. Tomkiewicz had knowledge prior to his involvement with Mr. Nick that he was aware that Mr. Bryant was solicited for murder for hire. What our position is, is during those two meetings, there was information discussed relative to the sex case, which includes what statements were made and that they were potentially coerced. Meetings with whom? Between Christian Shepard and Attorney Tomkiewicz on May 4th and May 11th. But wasn't that issue resolved by Justice Carter's decision earlier where he found that there's no evidence leading that panel to believe there was information obtained by Tomkiewicz? Because what had happened, I called Shepard one, was that the hearing that proceeded in front of Judge Bermilla did not involve a live testimony or any statements or any other evidence from Mr. Tomkiewicz or Mr. Shepard. So when Shepard one was decided, we then made the strategic decisions to say, well, Christian, you're going to take the stand. And I believe the state's attorney's office called Mr. Tomkiewicz, and there was some discussion as to whether or not confidentiality applied. And Judge Kennedy said that that was overcome and allowed Mr. Tomkiewicz to testify. So now what we have is the live testimony of Christian Shepard. We have a live testimony of Attorney Tomkiewicz. We have the stipulated testimony of Mr. Nick, all of whom were subject to cross-examination at the trial level. And we have a trial judge who's sitting, watching these witnesses testify, making credibility determinations, and deciding who is more believable than the other. What about the other issue that Justice Carter discussed, and that is standing to enforce the rules? I'm not seeking to hold anyone in violation of the ARDC rules, but both the state and the defense in this case have cited to a number of cases. Unfortunately, a lot of them deal with family law matters or civil matters where parties are moving to disqualify attorneys due to conflict of interest issues. And so the issue of the rule itself is merely the framework to say, this is what happened. Well, what's more important is exactly what the state was saying. The focus should be on what the state did. And that's what's the issue here. I'm not here to say what Mr. Tomkiewicz did was ultimately right or wrong. I'm not the arbiter of ethics. I'm not the ARDC board. I know Mr. Tomkiewicz very well. I could easily see myself in this situation. And it's unfortunate that it had to happen. But the real issue is, if there was an attorney-client relationship, and if he had obligations to both clients, what should the state be able to do? That's a pretty big if. And that's why we had a hearing at the trial court where Mr. Shepard testified as to the nature of the two meetings. Mr. Tomkiewicz testified. I would submit that just based on some of the evidence that was presented that Mr. Shepard was more credible. Ultimately, we had a judge who made a finding that there wasn't an attorney-client relationship based on things that were discussed and the information that was presented to him. And so if we have this factual ruling, then the question becomes is, did the state make a mistake here? Did the state overstep their bounds? Do you think Attorney Tomkiewicz, and I can't pronounce the name, so hopefully he won't be too upset with me. Do you think he violated one of the canons or one of the rules? I would say that, if I had to give my opinion of it, I would say that he did. I would say that he probably – So are you – have you reported that to the ARDC? What we have done is we have – as part of this, we have consulted with attorneys to see whether or not there was a HMLA obligation here. We have not, and so we are relying on that opinion from attorneys that do practice regularly in front of the ARDC. So the fact that you chose not to report him suggests to me that you're not convinced there was a violation. No, I would – If there wasn't a violation, then there's nothing to exclude. I would disagree with that. I would say that we have consulted with attorneys in relying on their position. But ultimately, even if there was or was not an ARDC violation, the real issue is whether or not the state was allowed to exploit it. Well, okay. Let's take this, if we could, one step at a time. The trial court below talks about an ethical lapse by the lawyer. First of all, could you – so I can understand this, what lawyer and what was the ethical lapse? I believe the trial court was referring to Mr. Tompkins' ethical lapse in representing Mr. Bryant and Mr. – excuse me – the ethical lapse is representing Mr. Shepard and Mr. Bryant at a time when he is assisting the state and Mr. Bryant in obtaining incriminating information against his other client. And this prejudice, Mr. Shepard, just how? So in a solicitation for murder for hire, if the underlying basis is that I want to kill the witnesses in the crime that I'm accused of and the officers that investigated me, I'm very sure that the state's attorney in the case would want to introduce that evidence in the sex case as well as any subsequent prosecution as other crimes evidence in consciousness of guilt. So that's where the prejudice comes in. In the plan to murder all these folks, again, you agree that if the defendant, if Shepard had told his own lawyer that, had told Tompkins that, Tompkins would have had a duty to go to the police with that. Yes. Right? Yes. And so, but Tompkins didn't go to the police with that. It turns out Tompkins' other client who's sitting in the Will County Jail goes to the police with it. And then they just come and say, hey, we want your guy to wear, your client over here to wear a wire. And at the end of the day, he says, yeah, go ahead on. And so, what is offensive about that? Well, what it was, Justice Schmidt, is we're ignoring the fact that Mr. Bryant in court specifically wanted his attorney involved. Mr. Bryant had demands as it related to his case. It was very obvious to the state's attorney's office that if I knew Mr. Tompkins and I need to make sure that Bryant is on board, and I think that's the word that Mr. Nick used during his trial testimony, that means we have an individual who's not magnanimously doing this. That means an attorney needs to be involved to negotiate the terms of this potential agreement. And that leads to the critical legal question, so what? What's that got to do with excluding evidence? Because when the state plays the role in that, okay, because this is not a foregone conclusion. What did the state do wrong? The state, what they said was, is we're going to get an attorney who represents both parties to help us get information against the other one. How would the state have known there was an informal conversation between Mr. Shepard and Tompkins? Well, what was interesting about that situation is the procedural history in this case is very unusual. There was a first pleading that was filed, and it was not known to us that there was any conversation involving Mr. Nick and Mr. Tompkins. Mr. Nick only chose to reveal his role in all this after a hearing had been conducted prior to the first trial judge making his ruling. And so in the sense that how would, to answer your question, the fact that the state chose not to disclose what had really happened, and in fact affirmed that, hey, if we review those pleadings, they filed verified pleadings saying there was no way we could have known that Tompkins was involved in any way, shape, or form with Mr. Shepard. But during Mr. Nick's testimony, it became apparent to him, at the very least during the conversation with Mr. Tompkins, I believe the record also shows that Mr. Nick knew that Attorney Tompkins had met with Shepard before that. But during that conversation, when Mr. Nick gets the impression, and what he said was, this was more than just two people meeting in the jail, and that I had concerns when Mr. Tompkins said, I'm not going to represent him anymore, that dealt with my concerns. He never entered an appearance for him. But that just means the formal representation in a court of law. A person can still form an attorney-client relationship with somebody without having filed an appearance. That's why the case law says it doesn't require a contract for employment. It doesn't require consideration of the exchange. It requires the manifestation of consent between the parties. And the formation of an attorney-client relationship has always been something that's client-centric. It's not necessarily from the perspective of a lawyer. What about whatever attorney-client relationship there was between Shepard and Tompkins, what about that relationship had anything at all to do with the gathering of this information and the wire? How did that play into that one iota? Sure. So what we have is kind of two sets of evidence. There's what Brian allegedly heard from Mr. Shepard in the first place. The trial court didn't suppress any of that. We then have what further evidence can be gleaned from this. If I had knowledge that someone was trying to wear a wire against one of my clients, the first thing I would do is go to my client and tell him, shut up, don't say anything, don't talk to this guy. Start using your head. Don't get yourself out of a hole by digging further. But what the issue is, is that Mr. But you agree that once the word's out that his client is planning on committing a series of horrific crimes, that he has an ethical obligation not to represent him anymore. And he's got an ethical obligation not to go to the client and say, hey, the police are on to your plan to kill people, and you need to dummy up and be careful who you talk to about your plan to kill people. He can't do that. I disagree with that for two reasons. The first thing is this, is at the time of the conversation, Mr. Tomkiewicz has no direct first-hand knowledge that his client has engaged in any unlawful activity. The only thing that is presented at this point on when Mr. Nick and Mr. Tomkiewicz are meeting, is that somebody wants to be a jailhouse snitch against another inmate in the adult detention facility. We have no independent evidence of corroboration to suggest that Mr. Shepard was going to do these things. For all we know, Mr. Bryant could have tried to scam the situation in an effort to get one over on the state to benefit himself because he wanted that furlough. But to the second point, the issue of the ethical obligation is, your hypothetical is always focused on whether or not Shepard directly told Tomkiewicz, and what I'm saying is that Tomkiewicz had no first-hand knowledge. He just had to presume that everything he was being told was the truth. But as a defense attorney, I may have knowledge that my client wants to commit criminal acts. I can advise him to not violate the law. I cannot advise him on how to continue to violate the law. So if I have a client who said... Or avoid detection for continuing violations. No, I can admonish him that if you make statements that could incriminate yourself, you shouldn't do that. Any more so that I would tell my client, who gets picked up on any offense, don't talk about the case on the phone because they're recording it. I think it's absolutely appropriate that if an attorney knows that he has a client who's under investigation for a criminal offense, to advise the client to shut up, to not make any further statements. That's completely ethical. I cannot advise my client on how to further break the law. I cannot advise my client on different ways for him to engage in a solicitation. But it's completely ethical for an attorney to advise their client to not break the law. And the fact that Mr. Tomkowitz may have had knowledge that Mr. Shepard may have committed some other offense while he's in custody. We're talking about a solicitation for murder for hire, but for all this could be a smuggling and contraband in the jail, or pushing a guard, getting into a fight with another inmate, or damaging property. We're getting caught up on the nature of the offense that he's trying to engage in, as opposed to the fact that we have an attorney who's trying to serve two masters and the role that the state played in that. Okay, so we'll agree to disagree. Now let me ask you this. Would you describe Mr. Tomkowitz's behavior here in this situation as outrageous? What I would describe it as, I guess the way, I don't want to use the word outrageous. I wouldn't use that word. What word would you use? What I would say is that he probably had good intentions, but probably didn't recognize the sort of quandary that he was in, because it's such a unique and odd situation to be in. Okay, good. Now let's talk about when we use the exclusionary rule. Even if it's state misconduct, do we exclude evidence based on every misstep by the police? I would say not always. And, in fact, is a good faith belief or a good intention enough to avoid application of the exclusionary rule? Because the exclusionary rule punishes the public, too. It's recognized by keeping very relevant evidence of sometimes horrific crimes out of court. So it's a balancing act. And it's not every miscue, even if we were to disagree about whether or not there was an ethical violation, it's still not every miscue that triggers the application of the exclusionary rule. I would also agree with that. And so what public policy is furthered here by excluding that information that was acquired on that wire? I think the public policy that's being served here is this, is that in such a unique situation where this has come up, and I think this is a case of first impression, I quite plainly say that in my papers, but the public interest that's being served here is this, is that if a situation like this comes up again, it's going to force the prosecutor to decide how to proceed. To say to him, look, this is a weird situation. I need to slow down and take a step back. Should I tell Mr. Tompkins, I would feel better if you got out of the case and allow us to get another attorney to represent him? Should I bring this issue in front of a trial court judge to appoint representation for Mr. Bryant so that way we don't have to place Mr. Tompkins in this sort of bind? That's what the policy would foster. That in these situations, the haste to obtain this evidence, what it is is if their evidence was so strong that they believed that they were going to furlough him prior to wearing the wire, the solicitation, they already have evidence of a solicitation. Let's just rely on the jailhouse to get this evidence. To get the wire, that's icing on a cake. They have enough evidence there. They have enough evidence, apparently, to get a wire, which means there's probable cause to believe that the solicitation took place, which means that there's enough evidence prior to the wire to obtain charges. In this case, the state had two interests, preventing crime, which they did, and prosecuting an offense. Now, put yourself in a prosecutor's position for just a second and say, which would you rather have in front of that jury, one con saying the other con told him something or a tape-recorded statement of the defendant saying exactly what this guy said he said? In other words, it's no longer he said, she said, and this guy is saying this because the state offered him a deal, he's got him out of the lie. Well, you get to hear it from the defendant's own mouth. I'd love the wire. I'm not going to deny that. I'm not going to deny the wire is strong evidence as it relates to the solicitation. I'm also not going to deny that the wire is strong evidence as to the underlying sex assault case, because if you're going to kill your witnesses, you're afraid of what they have to say. However, the prosecutor's job is not to secure convictions. It's to ensure justice, which means fidelity to a defendant's right to a fair trial, to an attorney of his choosing, to ensure that his communications are always held within confidence, and anything which tends to defeat those undermines the administration of justice. And what confidence of Shepard's did Tomkawicz disclose? I don't believe that there's been any evidence that he actually disclosed any confidential information. The one thing we don't have is what, if anything, he may or may not have discussed with Franklin Bryant, because that would be covered under their attorney-client confidentiality privilege, and certainly we don't have any way for us to that. But the real issue is that after this happened, Mr. Tomkawicz didn't even tell Mr. Shepard he wasn't going to represent him anymore. He had to find out three weeks later or two weeks later. When did he tell him he would represent him? He said that during, I would say that the attorney-client relationship formed after or during the May 11th meeting, when there was consent by Mr. Tomkawicz to represent Mr. Shepard, when there was discussion as to the fee exchange and a communication as to that, when there were discussions as to the fact. I'm not going to get into every issue that supports that. At the time that Mr. Nick spoke to Mr. Tomkawicz about Mr. Bryant's participation, who represented Mr. Shepard? Mr. Tomkawicz. Did he have a public defender at that time? He did. So he has two attorneys. Correct. And so multiple. In the sexual assault case? Yes. The private counsel and the public defender? Yes. The issue is when is the relationship formed and when are the attorney-client duties owed? Are we going to extend this rule? Mr. Tomkawicz spoke to Mr. Shepard two years ago about a non-referee. Is he always going to be Mr. Tomkawicz's current client? No. When does it end? I guess when the attorney-client relationship ends is when it's appropriately terminated. It was never appropriately terminated. Certainly, we could say the termination took place following the wire and things of that nature. But the example that you're giving, Justice Wright, is for an unrelated crime that the defendant was not in custody for and was not speaking to Mr. Tomkawicz about. The fact that the public defender was off court record for the case does not preclude somebody from having two attorneys. It does not preclude the two different sets of attorneys from owing the same duties to Mr. Shepard. The formal representation in court is not the only thing or is not exclusive to represent somebody. I can represent somebody. I'm going to interrupt you just for a moment. I think you've made your point. But I do want to speak to your address of the justice, the system of justice. You have twice accused Mr. Tomkawicz of violating the rules of professional conduct. Twice. How fair is that when you stand up here today and say, Well, you know, I don't think I need to report him to the ARDC. What is this doing to him and his profession? I can't begin to speculate to that. The only thing I can tell the court is when this issue Twice the trial judge has thrown out evidence based on Mr. Tomkawicz violating his ethical duties to a client. I would say actually three times. The first pleading. So how can you in good conscience stand there and talk about justice? I think it's ultimately, I understand the court's concern. I would say that two wrongs don't make a right. You know, the fact that we may be in the wrong by not filing a Himmel claim, by saying that the court may not be right in its own action and not filing some sort of Himmel claim or something like that. I can't sit here and talk about that. I understand the court's argument. I would tell the court this was a grave concern of mine personally. That's why we made the choice. We consulted with other attorneys, and they said we were not obligated to formally report this to the ARDC. Well, I doubt if you've got any Himmel problems. You've raised this in court. Let me just ask you this. As far as you know, what you're asking with the trial, are you aware of any other court review anywhere in the free world that has held that an ethical violation between a defense lawyer and his client was the basis to trigger the exclusionary rule to exclude the state's evidence against the lawyer's client, the defendant? I am not. So we'll be the first court in the free world to do that. But to take it one step further, it wasn't Mr. Tomkiewicz playing this role. It was the state bringing in Mr. Tomkiewicz. It was the state making sure to tell Mr. Tomkiewicz, Mr. Tomkiewicz, you've got to make sure Franklin Bryant is on board so we can do all this. Explain to him he's getting his furlough. Explain to him he's getting his wire. That's where the exclusionary rule was. And so it's not that an ethical violation took place under whatever circumstance. The majority of my case law that I cited, too, points to the state making an ethical violation. And that's why I say I think this is a case of first impression. And that's why I think the state appropriately brought up the focus here should be upon what the state did. If the state brought in this attorney and solicited him, excuse me, I don't want to use that word, asked him or informed him or told him, and the state believed that they were required to do so, and I agree that they were required to do so. Because if Mr. Bryant was seeking consideration that deals with this case, that deals with the representation by Mr. Tomkiewicz, and therefore he was required to do it. And so because of that, when the state then realizes, wait a minute, you met with Christian Shepard? Are you his attorney? Are you not his attorney? That's when we start to get into a quagmire. Time's up, Counselor. You can finish. And so because of that, when your Honor says, has there ever been a case that dealt with a defendant? No. That's where the NADC is. That's where civil rights or civil lawsuit for that ethical violation take place. The issue here is should the state be able to benefit from this ethical lapse? Should the state be allowed to exploit it? Again, and you're talking about the ethical lapse of Tomkiewicz. Yes, I would say that the state engaging in this may have had some ethical issues of their own. I'm not really quite sure. But I think what the issue is is if the state is aware or the state knows that there could be this problem here, what are they then allowed to do to obtain that evidence? What are they allowed to do legally and appropriately? And so one of the things is this motion has been brought up in front of two trial judges in three different sets of pleadings. And I know that this court reversed one of those decisions. But as I started off by saying, there's something about all this that doesn't smell right. When the state chooses not to disclose that they actually spoke to Mr. Tomkiewicz until after the first hearing is done, that should speak volumes as to whether or not they truly believe that they were in the right on all this. The first pleading specifically said the state had no knowledge that Mr. Tomkiewicz was involved with Mr. Shepard. And right before the trial judge is going to issue his first ruling, that's when Mr. Nick just stands up and gives this unsolicited sort of statement. Oh, yeah, we met with Mr. Tomkiewicz. We knew about all this. And so we just thought it would be appropriate for the court to know that now. That's a game changer. And that didn't come off for years. I think that came out in 2013, three or four years after this took place. And there's been no formal disclosure information as it relates to that. I think it speaks to the state even saying, wait a minute. Haven't you addressed Justice Shepard's question? I think your time ran out quite a while ago. Yes. I think that's where the issue is, is what the state did. Thank you. Thank you, counsel. Counsel? Thank you, Your Honors. Well, I think the issues have been flushed out quite thoroughly. Just briefly piggybacking on what counsel kind of ended with there about the fact that Michael Nick waited or didn't reveal his meeting with Tomkiewicz for a few years after it happened. Counsel is suggesting that that implies that Nick was trying to hide this meeting. No, I think it's the exact opposite. Nick didn't bring this up because Nick didn't think it mattered, because Nick didn't think he did anything wrong. And I think the record is pretty clear that Nick didn't do anything wrong. So why would he come out with this relatively innocuous meeting with Anthony Tomkiewicz when it didn't really matter in the grand scope of things? So I don't think that impugns Nick's actions whatsoever, just the fact that he waited three years to come forward with this relatively meaningless information. Just a couple of comments. Counsel mentioned several times in the trial judges in their rulings on the motions to suppress, also mentioned multiple times that the reason that the judge suppressed the evidence is because the state, quote, exploited Tomkiewicz's laughs. First and foremost, there has to be a laugh from Tomkiewicz. As we've discussed today, and again, flushed out, I think there was no laughs whatsoever by Tomkiewicz. Number two, assuming, arguably, there was a laugh, how on earth did the state exploit this by allowing the wheels that have already been in motion to record this, to obtain the wire, and by using that lawfully obtained, competent evidence in the prosecution of the defendant for this crime, I think, obviously, that the state had a duty to go forward with all of this. I just simply didn't do anything wrong. To exclude the evidence here, the state has to have done something wrong, and I still don't know what that might have been. Just so we're clear, after Tomkiewicz's conversation with the state's attorney about the wire, this revelation that Shepard was planning on killing most folks, and before the wire, were there any other meetings between Tomkiewicz and Shepard? There were just the two, just the May 4th and May 11th, yes, before he met with Nick. But before, so Tomkiewicz never met with Shepard between what he learned and the time that his other client goes in with the wire? I'm sorry, yeah, no, no, yes. There were no meetings after that conversation? No, it sounded like the defendant learned, according to him, several weeks later, that he and Tomkiewicz weren't going to have any relationship going forward at all. So Tomkiewicz certainly couldn't have been an agent of the state when he met with Shepard? No, certainly not. Hadn't even talked to him about this, didn't even know about it? No, no, that's true. And with that, the people would argue and request that this court overturn the trial judge's suppression of the evidence in both of the defendant's cases. If there are any other questions, I'd be happy to answer those at this time. Thank you. Of course, take this matter under advisement, and we'll now take a break.